MARIAN H. GILFILLAN, CONSERVATOR v. BOROUGH OF GROTON

SUPERIOR COURT     NEW LONDON COUNTY     FILE No. 16780

Memorandum filed October 10, 1951.

*Waller, Anderson & Smith,* of New London, for the Plaintiff.

*Harry C. Brogan,* of New London, for the Defendant.

ALCORN, J.     The plaintiff conservator sues to recover damages allegedly sustained by her ward as a result of a fall on an ice- and snow-covered street belonging to the defendant. An amendment to the complaint alleging inadequate lighting was abandoned during the trial. No issue is raised as to the form and allegations of the complaint. The real party in interest is the ward. *Pickett* v. *Ruickoldt,* 91 Conn. 680; and he will hereinafter be referred to as the plaintiff, as the parties in fact treated him during the trial.

It is undisputed that the plaintiff sustained personal injury as the result of a fall at about 6:40 a. m. on the morning of February 5, 1945, on the traveled surface of John Street, a public road maintained by the defendant. The issue is over the cause of the fall. The plaintiff claims it occurred because the highway surface was defective due to an accumulation of ice or hard-packed snow which had existed for several days. The defendant, on the contrary, claims that the cause was a slippery condition due solely to a storm which was in progress at the time of the fall.

The plaintiff is now eighty years old. At the time of his injury he was seventy-three years old and was employed as an assistant time clerk at the Electric Boat Company in Groton. On the morning of February 5, 1945, he arose at his home in Mystic at about 5:30 to find a light snow falling. His wife called his attention to the very slippery conditions outside and asked him if he was not afraid to go to work. He replied "No, they always have the area in good shape." He left his home and walked about two blocks to an agreed meeting place with a fellow employee, who drove him to Groton. Plaintiff's own sidewalk to the street was so slippery that he avoided it in leaving his house. He met his driver at about 6:15 a. m. and they drove by automobile to Chicago Avenue, a public street in the defendant borough. The highway over which they drove was icy except where the ice was worn off in spots by the traffic. The car was parked on the west side of Chicago Avenue, where the ground was covered with about two inches of snow. From there the plaintiff walked along the sidewalk of Chicago Avenue to Poquonock Road, another public highway in the defendant borough. There was ice, and snow to a depth of about an inch, on that walk. Upon reaching Poquonock Road, the plaintiff walked along a sidewalk on its south side to the intersection of John Street, the conditions under foot being substantially the same as on Chicago Avenue.

John Street is a public street about a block long maintained by the defendant borough, and it descends at a 10 to 12 per cent grade from its intersection with Poquonock Road toward the plant of the Electric Boat Company. It is much used by employees of the latter concern in going to and from work. Along the edge of its intersection with Poquonock Road there is a "hump" or raised area formed by an abandoned trolley roadbed. This "hump," and the grade of John Street militate against the retention of moisture from melting snow or other source which might freeze and produce hazardous condition at that point.

There are sidewalks on both sides of John Street for pedestrians. Upon reaching the intersection, the plaintiff considered that the surface of the walk on the south side of John Street appeared slippery. He knew that there was also a walk on the north side but he did not observe its condition, and its condition is not disclosed. The plaintiff knew that the road surface of John Street formed a dangerous and hazardous descent in a storm because he had used it since 1943. He chose to descend

the grade on John Street, however, using the portion of the road designed for vehicular traffic, and, at the brow of John Street, he fell due to the slippery condition.

Weather records were offered, which were compiled at a spot in New London one and one-quarter miles from the scene of plaintiff's fall. These reports are evidence of the conditions at the location of plaintiff's fall since the evidence of general conditions justifies the inference that weather conditions in the two locations were substantially identical. *Lessow* v. *Sherry,* 133 Conn. 350; *Bjorkman* v. *Newington,* 113 Conn. 181, 187.

The weather reports indicate that a trace of snow fell between 2:50 and 5 p. m. on January 22, 1945. On January 23 snow, rain, and hail began about 10 a. m. resulting in an accumulation of about one and one-quarter inches of snow. The following day, January 24, a trace of snow fell between 2 and 3:20 p. m. but did not result in a measurable increase on the ground. The temperature on these days ranged from 19 to 39 degrees. For the next four days the temperature ranged from –2 to 32 degrees, and on January 28 a half inch of snow and ice remained on the ground. On January 29 there was a snow and rain storm beginning about midnight and on that day the temperature ranged from 28 to 41 degrees. From January 30 to the night of February 4 there was no precipitation and the temperature during that period ranged from 13 to 35 degrees. Any accumulation from previous storms had disappeared from the ground by February 4.

On the evening of February 4 a wet snow and sleet began to fall and continued intermittently during the night. It caused a coating of ice to form on streets throughout the borough. At about midnight borough highway crews were called out to start sanding. At 3:30 a. m. on February 5, more men were called out and plowing started about 4:00 a .m. The temperature range on February 5 was from 30 to 38 degrees and the snow packed easily. At about 6:30 the sand trucks worked in the area in the vicinity of John Street and the Electric Boat Company in anticipation of employees' arriving for work. On John Street at the point where plaintiff fell, the surface of the roadway was slippery with a film of ice which was breakable under a heavy tread. A police officer who responded to a call when the plaintiff fell had no difficulty driving a police cruiser up the grade of John Street to the scene. The area of the plain-

tiff's fall had been sanded and the officer was able to walk without difficulty by treading heavily enough to break through thin ice which was forming over the sand.

The court has been forced to reach a conclusion as to conditions surrounding plaintiff's fall from recollections of witnesses after an interval of over six years supplemented by the physical surroundings and the weather reports. The drainage facilities in the area coupled with the recorded temperatures and the use made of the street negative, in the light of the other evidence, the plaintiff's claim that his fall was due to a long-standing accumulation of ice from which the immediate fall of snow was blown clear. It is abundantly established that he attempted, with full appreciation of the hazards involved, to descend this steep grade made slippery by the storm then in progress.

It is unnecessary to detail the evidence as to the facilities at the defendant's disposal and the use made of them in this storm; nor to discuss the plaintiff's own care and the fact that this fall occurred in the roadway rather than on a sidewalk. The defendant met the duty which the law imposes upon it under all the circumstances. *Bazinet* v. *Hartford*, 135 Conn. 484, 487.

Enter judgment for the defendant.